*s'in*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 2 4 2009 ★

BROOKLYN OFFICE

---------------------------------------------------

CARL LEE HANSEN and
VALERIE HANSEN,

Plaintiffs,

-against-

I-FLOW CORPORATION, DJO, LLC,
DJO, INC. f/k/a DJ ORTHOPEDICS, INC.,
ABBOTT LABORATORIES and
HOSPIRA, INC.

Defendants.

--------------------------------------------------------------------x

**CASE NUMBER:**

**COMPLAINT
AND JURY
DEMAND**

**CV09-_-753**

OWNES, J.

LEVY, M.J.

Plaintiffs, by their attorneys, **PARKER WAICHMAN & ALONSO L.L.P.**, **THE MAHER LAW FIRM** and **WAGSTAFF AND CARTMELL, L.L.P.**, upon information and belief, at all times hereinafter mentioned, allege as follows:

## JURISDICTION

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to each Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states or countries other than the state in which the named individual Plaintiffs reside.

## PARTIES

2.     Plaintiff CARL LEE HANSEN was at all relevant times a resident and citizen of either Washington.

3.     Plaintiff VALERIE HANSEN was at all relevant times a resident and citizen of either Washington.

4.     At all relevant times, plaintiffs CARL LEE HANSEN and VALERIE HANSEN were and still are wife and husband.

5.     Plaintiff CARL LEE HANSEN underwent shoulder surgery on his left shoulder on October 22, 2003 at East Portland Surgery Center. During the procedure, plaintiff's orthopedic surgeon implanted a DonJoy PainBuster Dual Pain Management brand "pain pump" into his shoulder. The pain pump injected pain relief medication, called Marcaine, directly into plaintiff's shoulder joints on a continuous basis, for up to 72 hours or more following the surgery.

6.     Plaintiff CARL LEE HANSEN underwent a second shoulder surgery on his left shoulder on April 8, 2004 at East Portland Surgery Center. During the procedure, plaintiff's orthopedic surgeon implanted a DonJoy Pain Management brand "pain pump" into his shoulder. The pain pump injected pain relief medication, called Marcaine, directly into plaintiff's shoulder joints on a continuous basis, for up to 72 hours or more following the surgery.

7.     Plaintiff CARL LEE HANSEN could not have discovered the cause of his injury until July 2, 20007 when his injury was attributed to the Defendants' pain pump and accompanying anesthetic.

8.     As a result of using Defendants' products, plaintiff CARL LEE HANSEN has severe loss of cartilage in his left shoulder, resulting in a total shoulder replacement, loss of range of motion, loss of functional use of his arm, and severe and permanent pain and suffering as well as other injuries.

9.      Defendants DJO INC. (formerly known as DJ Orthopedics, Inc.) and DJO, LLC (collectively referred to as "DJO DEFENDANTS") are incorporated under the laws of the State of Delaware with their principal place of business in Vista, California.

10.     DJO DEFENDANTS conducted regular and sustained business in Washington and New York by selling and distributing their products in Washington and New York, as described below.

11.     Defendant I-FLOW CORPORATION is incorporated under the laws of the State of Delaware with its principal place of business in Lake Forest, California.

12.     Defendant I-FLOW CORPORATION conducted regular and sustained business in Washington and New York by selling and distributing its products in Washington and New York, as described below.

13.     Defendants I-FLOW CORPORATION and the DJO DEFENDANTS are collectively referred to throughout this Complaint as DEFENDANT PAIN PUMP MANUFACTURERS.

14.     Defendant HOSPIRA, INC. is a corporation organized under the laws of the State of Delaware, having its principal place of business in Lake Forest, Illinois.

15.     HOSPIRA, INC. conducted regular and sustained business in Washington and New York by selling and distributing its products in Washington and New York.

16.     Through its subsidiaries and divisions, HOSPIRA, INC., researches, develops, manufactures, and markets pharmaceutical products, including Marcaine, which is defendant HOSPIRA INC.'s brand name for the generic anesthetic, bupivacaine, used in pain pumps manufactured and marketed by DEFENDANT PAIN PUMP MANUFACTURERS.

17.    Defendant ABBOTT LABORATORIES is incorporated under the laws of the State of Illinois, having its principal place of business in Abbott Park, Illinois.

18.    ABBOTT LABORATORIES conducted regular and sustained business in Washington and New York by selling and distributing its products in Washington and New York, as described below.

19.    Through its subsidiaries and divisions, ABBOTT LABORATORIES researches, develops, manufactures, and markets pharmaceutical products, including Marcaine, which is defendant ABBOTT LABORATORIES' brand name for the generic anesthetic, bupivacaine, used in the pain pumps manufactured and marketed by DEFENDANT PAIN PUMP MANUFACTURERS.

20.    Defendants HOSPIRA INC. and ABBOTT LABORATORIES are collectively referred to as DEFENDANT ANESTHETIC MANUFACTURERS.

## FACTUAL BACKGROUND

21.    At all relevant times, DEFENDANT PAIN PUMP MANUFACTURERS designed, manufactured, marketed, and distributed a medical device called a "pain pump," which delivers, via catheter, continuous doses of pain relief medication directly into the shoulder joint.

22.    The pain pumps deliver anesthetic pain medication, such as bupivacaine products, directly into the glenohumeral joint for 72 hours or more immediately following arthroscopic or open shoulder surgery.

23.    At all relevant times, DEFENDANT ANESTHETIC MANUFACTURERS designed, manufactured, marketed, and distributed bupivacaine

4

and bupivacaine mixed with epinephrine products (hereinafter "bupivacaine products") for use in orthopedic surgery, specifically for arthroscopic surgery.

24.    Bupivacaine products are commonly used in pain pump devices, including the pain pumps used following Plaintiff's shoulder surgeries.

25.    Glenohumeral chondrolysis is the progressive destruction of articular cartilage in the glenohumeral joint (the joint that connects arm to your shoulder) resulting in secondary joint space narrowing, which results in constant pain and loss of full use of the shoulder and/or arm.

26.    Postarthroscopic glenohumeral chondrolysis (PAGCL) is glenohumeral chondrolysis that results after arthroscopic surgery on the shoulder.

27.    Postarthroscopic glenohumeral chondrolysis (PAGCL) was first widely identified in 2004 in Petty DH, et al. *Glenohumeral chondrolysis after shoulder arthroscopy: case reports and review of literature*. Am J Sports Med. 2004; 32:509-515.

28.    In 2007, an article written by Hansen, Brent, et al. established an epidemiological correlation between the use of pain pumps after arthroscopic surgery on the shoulder and glenohumeral chondrolysis. Hansen, Brent, et al. *Postathroscopic Glenohumeral Chondrolysis*, Am J Sports Med. 2007; 35:1628-34.

29.    This epidemiological correlation between pain pumps and glenohumeral chondrolysis provides support to the previous studies done since the 1980s, which established that bupivacaine is cytotoxic to chondrocytes in animals.

30.    The continuous injection of the anesthetic medications into the shoulder joint causes the destruction of chondrocytes that cushion that glenohumeral joint resulting in the condition called glenohumeral chondrolysis.

31.    Defendants failed to recognize the correlation between the continuous injection of anesthetic medications into the shoulder joint despite the wealth of scientific information available.

32.    Upon information and belief, Defendants knew or should have known about the correlation between pain pump use and glenohumeral chondrolysis and still promoted, sold, advertised, and marketed the use of pain pumps and bupivacaine products for use after shoulder surgery.

33.    Upon information and belief, Defendants sought and were denied approval by the FDA for the use of pain pumps and bupivacaine after shoulder surgery.

34.    Glenohumeral chondrolysis has no effective treatment.  Most affected patients ultimately must have shoulder replacement surgery.

35.    Total joint replacement is a surgical procedure in which certain parts of an arthritic or damaged joint, such as a shoulder joint, are removed and replaced with a plastic or metal device called a prosthesis, or artificial joint. The artificial joint is designed to move just like a normal, healthy joint. The artificial shoulder joint can have either two or three parts, depending on the type of surgery required.

     a.   The humeral component (metal) is implanted in the humerus.

     b.   The humeral head component (metal) replaces the humeral head at the top of the humerus.

     c.   The glenoid component (plastic) replaces the surface of the glenoid socket.

36. As a result of the manufacture, marketing, advertising, promotion, distribution and/or sale of pain pumps to the Plaintiff herein, Plaintiff has sustained severe and permanent personal injuries.

## FIRST CAUSE OF ACTION
## AS AGAINST DEFENDANTS
## (NEGLIGENCE AND NEGLIGENCE PER SE)

37. Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

38. DEFENDANT PAIN PUMP MANUFACTURERS had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of pain pumps into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

39. DEFENDANT ANESTHETIC MANUFACTURERS had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of bupivacaine products into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

40. Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of the pain pumps and/or bupivacaine products into interstate commerce in that Defendants knew or should have known that

7

using pain pumps and/or bupivacaine products placed users at risk for developing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

41.    The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a.    Manufacturing, producing, promoting, formulating, creating, and/or designing intra-articular pain pumps without thoroughly testing them;

b.    Manufacturing, producing, promoting, formulating, creating, and/or designing intra-articular pain pumps without adequately testing them;

c.    Not conducting sufficient testing programs to determine whether or not the aforesaid pain pumps were safe for use; in that Defendants herein knew or should have known that intra-articular pain pumps were unsafe and unfit for use by reason of the dangers to its users;

d.    Selling the intra-articular pain pumps without making proper and sufficient tests to determine the dangers to its users;

e.    Negligently failing to adequately and correctly warn the Plaintiff CARL LEE HANSEN,    the public, the medical and healthcare profession, and/or the FDA of the dangers of intra-articular pain pumps;

f.    Negligently failing to recall its dangerous and defective intra-articular pain pumps at the earliest date that it became known that said pain pumps were, in fact, dangerous and defective;

g.    Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, intra-articular pain pumps;

h. Failing to test the pain pumps and/or failing to adequately, sufficiently and properly test intra-articular pain pumps.

i. Negligently advertising and recommending the use of the aforesaid intra-articular pain pumps without sufficient knowledge as to its dangerous propensities;

j. Negligently representing that said intra-articular pain pumps were safe for use for their intended purpose, when, in fact, they were unsafe;

k. Negligently representing that using intra-articular pain pumps in the glenohumeral joint had equivalent safety and efficacy as use in other joints of the human body;

l. Negligently designing intra-articular pain pumps in a manner which was dangerous to their users;

m. Negligently manufacturing intra-articular pain pumps in a manner which was dangerous to their users;

n. Negligently producing intra-articular pain pumps in a manner which was dangerous to their users;

o. Negligently assembling intra-articular pain pumps in a manner which was dangerous to their users;

p. Concealing information concerning tests, and/or reports, and/or studies from the Plaintiff CARL LEE HANSEN in knowing that intra-articular pain pumps were unsafe, dangerous, and/or non-conforming with accepted industry standards;

q. Improperly concealing and/or misrepresenting information from the Plaintiff CARL LEE HANSEN, healthcare professionals, and/or the public, concerning the severity of risks and dangers of intra-articular pain pumps.

r. Defendants violated statutes, rules and ordinates concerning the manufacturing, marketing, and/or testing of their product.

42.     Defendants under-reported, underestimated and downplayed the serious danger of intra-articular pain pumps.

43.    Defendants negligently compared the safety risk and/or dangers of the use of intra-articular pain pumps in the shoulder to other uses for the pain pump.

44.    Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of intra-articular pain pumps in that they:

      a.  Failed to use due care in designing and manufacturing intra-articular pain pumps so as to avoid the aforementioned risks to individuals when the pain pumps were used for their intended purpose in the glenohumeral joint.

      b.  Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the exposure of the cartilage of the glenohumeral joint to the medication administered through intra-articular pain pumps;

      c.  Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of intra-articular pain pumps;

      d.  Failed to warn Plaintiff CARL LEE HANSEN of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

      e.  Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of intra-articular pain pumps;

      f.  Failed to warn Plaintiff CARL LEE HANSEN, prior to actively encouraging the sale of the intra-articular pain pumps and bupivacaine, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

      g.  Were otherwise careless and/or negligent.

45.    Despite the fact that Defendants knew or should have known that intra-articular pain pumps caused unreasonably dangerous side effects, Defendants continued

to market, manufacture, distribute and/or sell pain pumps to consumers, including the Plaintiff CARL LEE HANSEN.

46.   Based   on   the   aforesaid,   DEFENDANT   ANESTHETIC MANUFACTURERS had a duty to warn physicians of the dangers of using their bupivacaine drugs for long periods of time in joint spaces but failed to do so.

47.   DEFENDANT ANESTHETIC MANUFACTURERS also had a duty to test and investigate the use of their local anesthetic drugs in arthroscopic surgery, but failed to do so.

48.   DEFENDANT ANESTHETIC MANUFACTURERS were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of bupivacaine drugs in that they:

    a. Failed to test and investigate the use of their bupivacaine drugs in arthroscopic surgery;

    b. Failed to instruct or warn the U.S. medical community that the safety of their bupivacaine drugs had not been established for use with pain pumps in the glenohumeral joint;

    c. In failing to disclose to the U.S. medical community that continuous injection of commonly used anesthetics, such as the bupivacaines marketed as Marcaine and Sensorcaine, into the glenohumeral joint can cause serious and permanent injury to the joint cartilage;

    d. In failing to instruct or otherwise include a precaution against placing the catheter of the intra-articular pain pump loaded a bupivacaine drug in the shoulder joint space;

    e. In failing to provide to the U.S. medical community adequate instructions for the safe use of bupivacaine and to warn physicians to use only those medications that could be safely and effectively used in the shoulder joint space;

    f. In failing to disclose to the U.S. medical community that the effectiveness of bupivacaine was uncertain for use with intra-articular pain pumps in the shoulder joint space;

11

g. Manufacturing bupivacaine with the knowledge that these drugs were being marketed by DEFENDANT PAIN PUMP MANUFACTURERS for use with intra-articular pain pumps in the shoulder joint space and at dangerously high doses, and knowing that use of these drugs in such a manner was associated with damage to articular cartilage;

h. Promoting bupivacaine for use in pain pumps, and specifically for use at high doses in the shoulder joint space without FDA approval for such indications; and

i. Failing to warn pain pump manufacturers and sellers not to promote the use of bupivacaine with pain pumps for infusion directly into the shoulder joint space.

49.    Defendants' actions, by violating statutes, ordinances and/or rules and regulations, constituted negligence per se.

50.    Defendants knew or should have known that consumers such as the Plaintiff CARL LEE HANSEN would foreseeably suffer injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

51.    Defendants' negligence was the proximate cause of Plaintiff CARL LEE HANSEN's injuries, harm and economic loss which he suffered and/or will continue to suffer.

52.    By reason of the foregoing Plaintiff CARL LEE HANSEN experienced and/or is at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

12

53.    As a result of the foregoing acts and omissions the Plaintiff CARL LEE HANSEN requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff CARL LEE HANSEN is informed and believes and further alleges that he will in the future be required to obtain further medical and/or hospital care, attention, and services.

54.    By reason of the foregoing, Plaintiff CARL LEE HANSEN has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### SECOND CAUSE OF ACTION
### AS AGAINST DEFENDANTS
### (STRICT PRODUCTS LIABILITY)

55.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

56.    At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed intra-articular pain pumps and bupivacaine as hereinabove described that were used in the Plaintiff CARL LEE HANSEN.

57.    That intra-articular pain pumps and/or bupivacaine were expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

58.    At those times, the intra-articular pain pumps and/or bupivacaine were in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff CARL LEE HANSEN.

59.    The intra-articular pain pumps and/or bupivacaine designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of the aforesaid pain pumps and bupivacaine.

60.    At all times herein mentioned, the intra-articular pain pumps and/or bupivacaine were in a defective condition and unsafe, and Defendants knew or had reason to know that said products were defective and unsafe, especially when used in the form and manner as provided by the Defendants.

61.    Defendants knew, or should have known, that at all times herein mentioned their intra-articular pain pumps and/or bupivacaine were in a defective condition, and were and are inherently dangerous and unsafe.

62.    At the time of the implantation of the intra-articular pain pumps and/or bupivacaine into Plaintiff CARL LEE HANSEN , the aforesaid products were being used for the purposes and in a manner normally intended, namely for use in conjunction with surgery on the glenohumeral joint.

63.    Defendants with this knowledge voluntarily designed their intra-articular pain pumps and/or bupivacaine in a dangerous condition for use by the public, and in particular the Plaintiff CARL LEE HANSEN.

64.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

65.    The intra-articular pain pumps and/or bupivacaine designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were manufactured defectively in that said products left the hands of Defendants in a defective condition and were unreasonably dangerous to their intended users.

66.    The intra-articular pain pumps and/or bupivacaine designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' products were manufactured.

67.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff CARL LEE HANSEN, in particular, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff CARL LEE HANSEN.

68.    The Plaintiff CARL LEE HANSEN could not, by the exercise of reasonable care, discover the defective nature of using the intra-articular pain pumps and/or bupivacaine herein mentioned and perceived its danger.

69.    The intra-articular pain pumps and/or bupivacaine designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate warnings or instructions as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including but not limited to pain, loss of the range of motion in their arm, loss of use of

their affected arm, need for subsequent surgery to replace the shoulder joint and/or the shoulder itself, and/or other severe and permanent health consequences.

70.    The intra-articular pain pumps and/or bupivacaine designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate warnings and/or inadequate testing.

71.    The intra-articular pain pumps and/or bupivacaine designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects including but not limited to pain, loss of the range of motion in their arm, loss of use of their affected arm, need for subsequent surgery to replace the shoulder joint and/or the shoulder itself, and/or other severe and permanent health consequences.

72.    By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiff CARL LEE HANSEN for the manufacturing, marketing, promoting, distribution, and selling of defective products, intra-articular pain pumps and/or bupivacaine.

73.    Defendants' defective design, manufacturing defect, and inadequate warnings of intra-articular pain pumps and/or bupivacaine were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

74.    By reason of the foregoing Plaintiff CARL LEE HANSEN has experienced and/or is at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in

nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

75.    As a result of the foregoing acts and omissions the Plaintiff CARL LEE HANSEN requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff CARL LEE HANSEN is informed and believes and further alleges that he will in the future be required to obtain further medical and/or hospital care, attention, and services.

76.    By reason of the foregoing, Plaintiff CARL LEE HANSEN has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### THIRD CAUSE OF ACTION
### AS AGAINST ALL DEFENDANTS
### (BREACH OF EXPRESS WARRANTY)

77.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

78.    DEFENDANT PAIN PUMP MANUFACTURERS expressly warranted that pain pumps were safe and well accepted by users.

79.    The pain pumps do not conform to these express representations because they are not safe and they have numerous serious side effects, many of which were not accurately warned about by Defendants. As a direct and proximate result of the breach of said warranties, Plaintiff CARL LEE HANSEN suffered and/or will continue to suffer,

17

and/or are at increased risk to suffer severe and permanent personal injuries, harm and/or economic loss.

80.    DEFENDANT ANESTHETIC MANUFACTURERS expressly warranted that bupivacaine products were safe and well accepted by users.

81.    The bupivacaine products do not conform to these express representations because they are not safe and they have numerous serious side effects, many of which were not accurately warned about by Defendants. As a direct and proximate result of the breach of said warranties, Plaintiff CARL LEE HANSEN suffered and/or will continue to suffer, and/or are at increased risk to suffer severe and permanent personal injuries, harm and/or economic loss.

82.    Plaintiff  CARL LEE HANSEN did rely on the express warranties of the Defendants herein.

83.    Members of the medical community, including physicians and/or other healthcare professionals, relied upon the representations and warranties of the Defendants for use of the pain pumps and/or bupivacaine in recommending and/or dispensing the pain pumps.

84.    The Defendants herein breached the aforesaid express warranties, as their pain pumps were defective.

85.    Defendants expressly represented to Plaintiff CARL LEE HANSEN, and/or his physicians, healthcare providers that the pain pumps and/or bupivacaine products were safe and fit for use for the purposes intended, that they were of merchantable quality, that they did not produce any dangerous side effects in excess of those risks associated with other, non-defective analgesics, that the side effects they did

18

produce were accurately reflected in the warnings and that they were adequately tested and fit for their intended use.

86.    Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that the pain pumps and/or bupivacaine products were not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants.

87.    By reason of the foregoing Plaintiff CARL LEE HANSEN has experienced and/or is at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

88.    As a result of the foregoing acts and omissions the Plaintiff CARL LEE HANSEN requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff CARL LEE HANSEN is informed and believes and further alleges that he will in the future be required to obtain further medical and/or hospital care, attention, and services.

89.    By reason of the foregoing, Plaintiff CARL LEE HANSEN has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FOURTH CAUSE OF ACTION
## AS AGAINST ALL DEFENDANTS
## <u>(BREACH OF IMPLIED WARRANTIES)</u>

90.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

91.    At all times herein mentioned, the DEFENDANT PAIN PUMP MANUFACTURERS manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the pain pumps for use after shoulder surgery.

92.    At all times herein mentioned, the DEFENDANT ANESTHETIC MANUFACTURERS manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold bupivacaine products for use after shoulder surgery.

93.    At the time Defendants marketed, sold, and distributed the pain pumps and/or bupivacaine products for use by Plaintiff CARL LEE HANSEN, Defendants knew of the use for which the pain pumps were intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

94.    The DEFENDANT PAIN PUMP MANUFACTURERS impliedly repre-sented and warranted to the users of the pain pumps and/or their physicians, healthcare providers, and/or the FDA that the pain pumps were safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

95.    The DEFENDANT ANESTHETIC MANUFACTURERS impliedly represented and warranted to the users of the bupivacaine products and/or their physicians, healthcare providers, and/or the FDA that the pain pumps were safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

96.    That said representations and warranties aforementioned were false, misleading, and inaccurate in that the pain pumps and/or bupivacaine products were unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

97.    Plaintiff CARL LEE HANSEN and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

98.    Plaintiff CARL LEE HANSEN and/or his physicians and/or healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether the pain pumps and/or bupivacaine products were of merchantable quality and safe and fit for its intended use.

99.    The pain pumps and/or bupivacaine products were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

100.    The Defendants herein breached the aforesaid implied warranties, as their pain pumps and/or bupivacaine products were not fit for their intended purposes and uses.

101.    By reason of the foregoing Plaintiff CARL LEE HANSEN has experienced and/or is at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

102.    As a result of the foregoing acts and omissions the Plaintiff CARL LEE HANSEN requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff CARL LEE HANSEN is informed and believes and further alleges that he will in the future be required to obtain further medical and/or hospital care, attention, and services.

103.    By reason of the foregoing, Plaintiff CARL LEE HANSEN has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FIFTH CAUSE OF ACTION
## AS AGAINST ALL DEFENDANTS
## (FRAUDULENT MISREPRESENTATION)

104.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

105.    The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff CARL LEE HANSEN and/or the FDA, and/or

the public in general, that said products, the pain pumps and/or bupivacaine products, had been tested and were found to be safe and/or effective for the control of pain after shoulder surgery.

106.    That representations made by Defendants were, in fact, false.

107.    When said representations were made by Defendants, they knew those representations to be false and they willfully, wantonly and recklessly disregarded whether the representations were true.

108.    These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiff CARL LEE HANSEN , the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend,   dispense and/or purchase said products, the pain pumps and/or bupivacaine products, for use as a delivering device for analgesics, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff CARL LEE HANSEN.

109.    At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff CARL LEE HANSEN used the pain pumps and/or bupivacaine products, the Plaintiff CARL LEE HANSEN was unaware of the falsity of said representations and reasonably believed them to be true.

110.    In reliance upon said representations, the Plaintiff CARL LEE HANSEN was induced to and did use the pain pumps and/or bupivacaine products, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

111.    Said Defendants knew and were aware or should have been aware that the pain pumps had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient warnings.

112.    Defendants knew or should have known that the pain pumps and/or bupivacaine products had a potential to, could, and would cause severe and grievous injury to the users of said product, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

113.    Defendants brought the pain pumps and/or bupivacaine products to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff CARL LEE HANSEN.

114.    By reason of the foregoing Plaintiff CARL LEE HANSEN has experienced and/or are at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

115.    As a result of the foregoing acts and omissions the Plaintiff CARL LEE HANSEN requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff CARL LEE HANSEN is informed and believes and further alleges that he will in the future be required to obtain further medical and/or hospital care, attention, and services.

116.    By reason of the foregoing, Plaintiff CARL LEE HANSEN has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### SIXTH CAUSE OF ACTION
### AS AGAINST ALL DEFENDANTS
### (FRAUDULENT CONCEALMENT)

117.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

118.    At all times during the course of dealing between Defendants and Plaintiff CARL LEE HANSEN and/or Plaintiff's healthcare providers, and/or the FDA, Defendants misrepresented the safety of the pain pumps and/or bupivacaine products for their intended use.

119.    At all times during the course of dealing between Defendants and Plaintiff CARL LEE HANSEN and/or Plaintiff's healthcare providers, and/or the FDA, Defendants misrepresented the dangers associated with exposure of bupivacaine products like Marcaine and Sensorcaine to cartilage.

120.    Defendants knew or were reckless in not knowing that its representations were false.

121.    In representations to Plaintiff CARL LEE HANSEN and/or Plaintiff's healthcare providers and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

a.  That pain pumps and/or bupivacaine products are not as safe as other available analgesics;

b.  That the risks of adverse events with the pain pumps and/or bupivacaine products were higher than those with other available analgesics;

c.  That the risks of adverse events with pain pumps and/or bupivacaine products were not adequately tested and/or known by Defendants;

d.  That Defendants was aware of dangers of exposing cartilage to bupivacaine products like Marcaine, in addition to and above and beyond those associated with other available analgesics;

e.  Plaintiff CARL LEE HANSEN was put at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish;

f.  That patients needed to be monitored more regularly than normal while using the pain pumps and/or bupivacaine products;

g.  That the pain pumps and/or bupivacaine products were manufactured, marketed, produced, and distributed negligently;

h.  That the pain pumps and/or bupivacaine products were manufactured, marketed, produced, and distributed negligently;

i.  That the pain pumps and/or bupivacaine products were manufactured, marketed, produced, and distributed negligently;

26

j.  That the pain pumps and/or bupivacaine products were designed negligently;

k.  That the pain pumps and/or bupivacaine products were designed defectively;

l.  That the pain pumps and/or bupivacaine products were designed improperly.

122.    Defendants were under a duty to disclose to Plaintiff CARL LEE HANSEN and/or his physicians, hospitals, healthcare providers, and/or the FDA the defective nature of the pain pumps and/or bupivacaine products.

123.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the pain pumps and/or bupivacaine products, including the Plaintiff CARL LEE HANSEN in particular.

124.    Defendants' concealment and omissions of material facts concerning, inter alia, the safety of use of pain pumps and/or bupivacaine products after shoulder surgery was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff CARL LEE HANSEN and/or his physicians, hospitals and/or healthcare providers into reliance, continued use of pain pumps, and actions thereon, and to cause them to purchase, recommend, and/or dispense pain pumps and/or bupivacaine products and/or use the products.

125.    Defendants knew that Plaintiff CARL LEE HANSEN and/or his physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material

omissions of facts surrounding pain pumps and/or bupivacaine products, as set forth herein.

126. Plaintiff CARL LEE HANSEN, as well as his doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

127. By reason of the foregoing Plaintiff CARL LEE HANSEN has experienced and/or are at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

128. As a result of the foregoing acts and omissions the Plaintiff CARL LEE HANSEN requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.

129. By reason of the foregoing, Plaintiff CARL LEE HANSEN has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SEVENTH CAUSE OF ACTION
## AS AGAINST ALL DEFENDANTS
## (NEGLIGENT MISREPRESENTATION)

130.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

131.    Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiff CARL LEE HANSEN , the FDA and/or the public in general that said pain pumps and/or bupivacaine products, had been tested and found to be safe and effective for their intended use in shoulders.

132.    The representations made by Defendants were, in fact, false.

133.    Defendants failed to exercise ordinary care in the representation of the pain pumps, while involved in their manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce, in that Defendants negligently misrepresented the pain pumps' high risk of unreasonable, dangerous side effects.

134.    Defendants breached their duty in representing the pain pumps' serious side effects to the medical and healthcare community, to the Plaintiff CARL LEE HANSEN, the FDA and/or the public in general.

135.    By reason of the foregoing Plaintiff CARL LEE HANSEN has experienced and/or are at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of

life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

136.    As a result of the foregoing acts and omissions the Plaintiff CARL LEE HANSEN requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff CARL LEE HANSEN is informed and believes and further alleges that he will in the future be required to obtain further medical and/or hospital care, attention, and services.

137.    By reason of the foregoing, Plaintiff CARL LEE HANSEN has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## EIGHTH CAUSE OF ACTION
## AS AGAINST ALL DEFENDANTS
## (FRAUD AND DECEIT)

138.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

139.    Defendants conducted research and used the pain pumps and/or bupivacaine products as part of their research.

140.    As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiff CARL LEE HANSEN, his doctors, hospitals, healthcare professionals, and/or the FDA that the pain pumps and/or bupivacaine products were safe for their intended use in the shoulder joints.

141.    As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiff CARL LEE HANSEN.

142.    Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff CARL LEE HANSEN, as well as their healthcare providers and/or the FDA.

143.    The information distributed to the public, the FDA, and the Plaintiff CARL LEE HANSEN by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

144.    The information distributed to the public, the FDA, and the Plaintiff CARL LEE HANSEN by Defendants intentionally included representations that Defendants' pain pumps and/or bupivacaine products were safe for their intended use in shoulder joints.

145.    The information distributed to the public, the FDA, and the Plaintiff CARL LEE HANSEN by Defendants intentionally included representations that Defendants' pain pumps and/or bupivacaine products carried the same risks, hazards, and/or dangers as other available analgesics.

146.    The information distributed to the public, the FDA, and the Plaintiff CARL LEE HANSEN by Defendants intentionally included false representations that the pain pumps and/or bupivacaine products were not injurious to the health and/or safety of its intended users.

147.    These representations were all false and misleading.

148.    Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that the pain pumps and/or bupivacaine products were not safe for use in shoulders and/or were not as safe as other available analgesics.

149.    Defendants intentionally made material representations to the FDA and/or the public, including the medical profession, and the Plaintiff CARL LEE HANSEN regarding the safety of the pain pumps, specifically but not limited to the pain pumps and/or bupivacaine products not having dangerous and serious health and/or safety concerns.

150.    Defendants intentionally made material representations to the FDA and/or the public in general, including the medical profession, and the Plaintiff CARL LEE HANSEN regarding the safety of the pain pumps and/or bupivacaine products.

151.    That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiff CARL LEE HANSEN to gain the confidence of the public, healthcare professionals, the FDA, and/or the Plaintiff CARL LEE HANSEN to falsely ensure the quality and fitness for use of the pain pumps and/or bupivacaine products and induce the public, and/or the Plaintiff CARL LEE HANSEN to purchase, request, dispense, recommend, implant and/or continue to use said products.

152.    Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff CARL LEE HANSEN that the pain pumps and/or bupivacaine products were fit and safe for use in shoulder joints.

32

153. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff CARL LEE HANSEN that the pain pumps and/or bupivacaine products were fit and safe for use in shoulder joints and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other available analgesics.

154. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff CARL LEE HANSEN that the pain pumps and/or bupivacaine products did not present serious health and/or safety risks.

155. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff CARL LEE HANSEN that the pain pumps and/or bupivacaine products did not present health and/or safety risks greater than other available analgesics.

156. That these representations were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

157. That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiff CARL LEE HANSEN, his healthcare professionals and/or the FDA, and were made in order to induce the Plaintiff CARL LEE HANSEN and/or his healthcare professionals to rely upon misrepresentations and caused the Plaintiff CARL LEE HANSEN and/or his healthcare professionals to

purchase, use, rely on, request, dispense, and/or recommend the pain pump and/or bupivacaine products.

158.    That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the pain pumps and/or bupivacaine products to the public at large, including the Plaintiff CARL LEE HANSEN, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other available analgesics.

159.    That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of the pain pumps and/or bupivacaine products by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the pain pumps and/or bupivacaine products.

160.    That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff CARL LEE HANSEN, as well as their healthcare professionals, into a sense of security so that Plaintiff CARL LEE HANSEN would rely on the representations and purchase, use and rely on the pain pumps and/or bupivacaine products and/or that their healthcare providers would dispense, implant, and/or recommend the same.

161.    Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiff CARL LEE HANSEN, as well as their healthcare professionals  would rely upon the information being disseminated.

34

162.    Defendants utilized direct to consumer adverting to market, promote, and/or advertise the pain pumps and/or bupivacaine products.

163.    That the Plaintiff CARL LEE HANSEN and/or his healthcare professionals did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of shoulder cartilage and was thereby induced to purchase, use and rely on Defendants' pain pumps and/or bupivacaine products.

164.    That at the time the representations were made, the Plaintiff CARL LEE HANSEN and/or his healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of the pain pumps and/or bupivacaine products.

165.    That the Plaintiff CARL LEE HANSEN did not discover the dangerous and serious health and/or safety concerns and the false representations of Defendants nor could the Plaintiff CARL LEE HANSEN, with reasonable diligence, have discovered the true facts.

166.    That had the Plaintiff CARL LEE HANSEN known the true facts with respect to the dangerous and serious health and/or safety concerns of the pain pumps and/or bupivacaine products, Plaintiff CARL LEE HANSEN would not have purchased, used and/or relied on Defendants' pain pumps and/or bupivacaine products.

167.    That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff CARL LEE HANSEN .

168.   By reason of the foregoing Plaintiff CARL LEE HANSEN has experienced and/or are at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

169.   As a result of the foregoing acts and omissions the Plaintiff CARL LEE HANSEN requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff CARL LEE HANSEN is informed and believes and further alleges that he will in the future be required to obtain further medical and/or hospital care, attention, and services.

170.   By reason of the foregoing, Plaintiff CARL LEE HANSEN has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

### NINTH CAUSE OF ACTION FOR THE PLAINTIFF VALERIE HANSEN AGAINST ALL DEFENDANTS (LOSS OF CONSORTIUM)

171.   Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

172.   Plaintiff VALERIE HANSEN, was and is the lawful spouse of Plaintiff CARL LEE HANSEN, and as such, was and is entitled to the comfort, enjoyment, society and services of her spouse.

173.   As a direct and proximate result of the foregoing, Plaintiff VALERIE HANSEN, was deprived of the comfort and enjoyment of the services and society of her spouse, Plaintiff CARL LEE HANSEN, and has suffered and will continue to suffer economic loss, and has otherwise been emotionally and economically injured. The Plaintiff's, injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

174.   For the reasons set forth herein, Plaintiff VALERIE HANSEN suffered and will continue to suffer the loss of her loved one's support, companionship, services, society, love and affection.

175.   By reason of the foregoing, Plaintiff VALERIE HANSEN has been damaged by the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1. Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

2. For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial;

3. Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

4. Awarding Plaintiffs reasonable attorney's fees;

5. Awarding Plaintiffs the costs of these proceedings; and

6. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
February 23, 2009

PARKER WAICHMAN & ALONSO L.L.P.

By: _____

ANDRES F. ALONSO (AA-8307)
111 Great Neck Road
Great Neck, New York  11021
Ph:  (516) 466-6500
Fax: (516) 466-6665
Email: aalonso@yourlawyer.com

-and-

THE MAHER LAW FIRM
Steven R. Maher
631 West Morse Boulevard
Suite 200
Winter Park, Florida 32789
Ph:  (407) 839-0866
Fax:  (407) 425-7958
Email: smaher@maherlawfirm.com

-and-

WAGSTAFF & CARTMELL, L.L.P.
Thomas P. Cartmell
Jeffrey M. Kuntz
4740 Grand Ave, Suite 300
Kansas City, Missouri, 64112
Ph: (816) 701-1100
Fax: (816) 531-2372
Email: tcartmell@wcllp.com
Email: jkuntz@wcllp.com

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands trial by jury as to all issues.

_____

ANDRES F. ALONSO (AA-8307)